**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY ANN DECARLO | ) | CASE NO. |
| 2796 Valley Road | ) | |
| Cuyahoga Falls, Ohio 44223 | ) | JUDGE: |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR DAMAGES** |
| U.S. RENAL CARE, INC | ) | |
| 5851 Legacy Circle, Suite 900 | ) | **JURY DEMAND** |
| Plano, Texas 75024 | ) | |
| | ) | |
| c/o Agent: CT Corporation System | ) | |
| 4400 Easton Commons Way | ) | |
| Suite 125 | ) | |
| Columbus, Ohio 43219 | ) | |
| Defendant. | ) | |

Plaintiff, Mrs. DeCarlo, by and through his undersigned attorneys, Roderick, Linton, Belfance, LLP complaining of Defendant, U.S. RENAL CARE, INC., brings the instant action requesting judgment in his favor, and against Defendant, and in support thereof, allege, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1.     The Plaintiff, MARY ANN DECARLO, ("Plaintiff" or "Mrs. DeCarlo") brings this action against U.S. RENAL CARE, INC., (the "Defendant" or "USRC") for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* as applied

by 29 U.S.C. §§ 12201 *et seq*., and Ohio's Employment Law Uniformity Act ("Act"), ORC § 4112 *et seq*. USRC's decision to terminate Mrs. DeCarlo was the last in a string of unlawful acts of discrimination and retaliation that Defendant has taken against Mrs. DeCarlo because of her age, and in retaliation for her protected speech complaining that she was victim of discrimination.

2.      Defendant hired Mrs. DeCarlo on August 26, 2019, as A Regional Director of Ohio And Mid-Atlantic Home Therapies. During her first year at USRC, Defendant assigned her a third territory to manage. By October 2019, she was Director of the Ohio, Mid-Atlantic and Northeast regions for Home Therapies. In June 2020 Mrs. DeCarlo's then supervisor asked her to serve as the interim regional vice president. She had one of the most productive and growing regions. Despite Mrs. DeCarlo's many achievements, Defendant began to subject her to discrimination and retaliation because she is a Fifty-seven (57) year old woman.

3.       On August 23, 2021, after two years of service to USRC, Defendant demoted Mrs. DeCarlo and replaced her with an employee who is twenty years younger, had less seniority at USRC and significantly less experience in the dialysis industry. Defendant used the pretext of a Performance Improvement Plan ("PIP"), to demote Mrs. DeCarlo after her initial reports to human resources about her supervisors.

4.      After the demotion, Defendant withheld nearly all of Mrs. DeCarlo's bonus pay for 2021 based on the pretext of "management discretion". When Mrs. DeCarlo requested human resources to get involved, the Defendant retaliated against her forced her to choose

between another demotion or a performance improvement plan, whereas younger, similarly situated employees, with worse performance records were given their full bonus, even those who were not eligible.

5.     Defendant then refused to investigate Mrs. DeCarlo's complaints of disparate treatment by her supervisors. A few days after Defendant declined to put any findings in writing for Mrs. DeCarlo, Defendant retaliated against her again. On August 25, 2022, one day before her three-year service anniversary, summarily fired Mrs. DeCarlo and assigned he work to a substantially younger person.

6.     Mrs. DeCarlo seeks back pay and the lost economic benefits of her employment, front pay in lieu of reinstatement, compensatory, liquidated, and punitive damages, reasonable attorney's fees and costs of litigation, and all other relief this Court may deem just.

## JURISDICTION

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this is a civil action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., the Age Discrimination in Employment Act ("ADEA"), as codified, 29 U.S.C. §§ 621 to 634. This court has supplemental jurisdiction over plaintiff's related claims arising under state laws pursuant to 28 U.S.C. §1367(a) because the state law claims pursuant to

ORC § 4112 *et seq.* are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

8.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. Plaintiff worked 100% remotely from her home in this district therefore Plaintiff was employed by and terminated by Defendant in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     On September 21, 2022, Mrs. DeCarlo timely filed charges of age discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). The charges were perfected on October 7, 2022, EEOC Charge No: 450-2022-05175 (Exhibit 2).

10.     On October 11, 2022, the EEOC issued Mrs. DeCarlo a Notice of Right to Sue (Exhibit 3). Since filing the Age Discrimination charge with the EEOC, sixty (60) days or more have elapsed. This Complaint has been filed within 90 days of receipt of that notice.

11.     On November 18, 2022, Mrs. DeCarlo filed charges with the Ohio Civil Rights Commission (OCRC) thereby satisfying the requirements of ORC § 4112.051.(OCRC Charge No: AKRA3(42307)11182022;22A-2023-00964) (Exhibit 4)  Mrs. DeCarlo has

satisfied the conditions of ORC § 4112.052 to bring a civil action for unlawful discriminatory practice relating to employment or a violation of Age Discrimination.

12.     Mrs. DeCarlo has fully complied with all prerequisites to jurisdiction in this Court under the ADEA, Title VII, and OCRC.

## PARTIES

13.     Plaintiff, Mrs. DeCarlo is a fifty-seven (57) year old woman who resides in Cuyahoga Falls, Summit County, Ohio.

14.     Mrs. DeCarlo is an employee, as defined by the ADEA and ORC § 4112.01. Defendant employed Plaintiff in a remote capacity at all times relevant to this suit. Mrs. DeCarlo attained her nursing credentials in 1995, which include a registered nurse (RN), a Bachelor of Science in Nursing (BSN) degree, and a Master of Science in Nursing (MSN) degree from Kent State University. She has held Director level positions for more than a decade.

15.     Upon information and belief, U.S. Renal Care, Inc, (USRC) is a Delaware corporation with its corporate headquarters located in Plano, Texas and registered foreign corporation in Ohio under the name "U.S Renal Care, Inc." (Exhibit 5). USRC owns, co-owns, and manages hundreds of dialysis facilities across the United States with thirty-six (36) dialysis locations in Ohio, including home dialysis programs. USRC is an employer as defined by the ADEA ORC § 4112.01. Since its founding in 2000, USRC provides

services to patients with chronic and acute renal disease. The company manages several acute-setting dialysis programs in conjunction with local hospitals. USRC serves approximately 26,000 patients across 31 States and the Territory of Guam, making it one of the largest dialysis-provider chain in the United States by number of patients.

**FACTS**

16. The above paragraphs are incorporated herein by reference.

17. Mrs. DeCarlo began working for Defendant on August 26, 2019, as A Regional Director of Ohio and Mid-Atlantic Home Therapies. At the time Defendant hired Mrs. DeCarlo, she was fifty-four (54) years old.

18. During her tenure, Mrs. DeCarlo Hired as Regional Director of Home Therapies for Ohio and The Mid-Atlantic areas. Approximately three months after Defendant hired her, management assigned her a third region to manage, the Northeast Region.

19. Defendant recognized Mrs. DeCarlo's accomplishments by offering her the job of Interim Regional Vice President in June 2020. Mrs. DeCarlo served in this role until a replacement was hired in October 2020. Mrs. DeCarlo was awarded a ten thousand ($10,000) dollar bonus for her additional work as Interim Vice President. Defendant also paid Mrs. DeCarlo 99% of her bonus compensation for the 2020 fiscal year. Mrs. DeCarlo's areas remained in the top performing areas for her entire time with USRC.

20.     Despite these accomplishments, Conda Schellinger, ("Schellinger") East Division Home Therapies Regional Director, made repeated comments to Mrs. DeCarlo's colleagues about her plans to fire her. For example, in December 2020, Cathy Weaver revealed her personal collusion with her close friend Schellinger to Shannon Plaine ("Plaine") saying Mrs. DeCarlo would be out of her role soon. Plaine reported this conversation to Ann Bonney ("Bonney") in human resources at USRC and Mrs. DeCarlo.

21.     Defendant requested that Mrs. DeCarlo train Ellen Braun ("Braun") in February 2021 to become the Regional Director of Home Therapies for New York. Braun was a female around thirty-five years old.

22.     In addition, Schellinger marginalized Mrs. DeCarlo while treating younger similarly-situated employees more favorably. She openly treated Mrs. DeCarlo differently, poorly both verbally and physically. An example was when Mrs. DeCarlo asked any question, she would "tisk" her and tell her that she should know that. She would roll her eyes and cross her arms whenever she asked a question or made a comment. She also offered resources (area managers to support the other regional directors but not Mrs. DeCarlo. Even though Mrs. DeCarlo had one of the most productive and growing regions. It displayed that she had a different plan for Mrs. DeCarlo's region compared to the rest of her territory.

23.     As a result, in the winter of 2020-2021, Mrs. DeCarlo confronted Schellinger regarding her treatment and the conversations regarding her future with USRC. Schellinger referred her to Jacqueline "Rosie" Marsh, Human Resources Director, East Division. Mrs.

7

DeCarlo attempted to reach Marsh, unsuccessfully but she did speak to Bonney about Schellinger's discriminatory treatment.

24.     Defendant paid Mrs. DeCarlo's bonus at the end of March 2021, for her performance January 1, 2020 – December 31, 2020. Mrs. DeCarlo received 95% of her annual bonus potential. In addition, Defendant paid Mrs. DeCarlo a ten thousand ($10,000) dollar bonus for her work as the Interim Regional Vice President for four months in 2020 (Exhibit 7).

25.     Despite Mrs. DeCarlo's performance record, Schellinger placed her on a performance improvement plan ("PIP") in June 2021 (Exhibit 8). Schellinger requested a meeting in forty-five (45) days to discuss Mrs. DeCarlo's improvement. Schellinger then extended the PIP for two weeks pending feedback from another person who was on a leave of absence (Exhibit 9). Upon Schellinger's meeting she demoted Mrs. DeCarlo to Area Manager, Home Therapies with an 11% salary reduction and Defendant blatantly ignored Mrs. DeCarlo's plea underneath the PIP's signature.

26.     On August 23, 2021, Schellinger sent a notice to all employees of USRC announcing Braun as the new Regional Director Home Therapies for Mid-Atlantic, Northeast and Ohio. Defendant required Mrs. DeCarlo to report to Braun, whom she trained months prior (Exhibit 10).

27.     During the Spring of 2022, Schellinger requested that Mrs. DeCarlo provide her 2021 strategic plan for Beth Murphy Sheeler, ("Sheeler") Director of Home Therapies, Southeast to use as a model to create her own strategic plan. Sheeler is around thirty-eight years old with less experience than Mrs. DeCarlo and her former peer. Schellinger had identified this same strategic plan in Mrs. DeCarlo's PIP as evidence of her "Seemingly lack of substantive knowledge of market and inability to identify growth opportunities, an/or inability/reluctance to communicate this knowledge'. Although Schellinger used the Strategic plan as evidence in Mrs. DeCarlo's PIP of her poor performance, Defendant did not meet to review the Strategic plan with Mrs. DeCarlo until the week on June 28, 2021 (Exhibit 11).

28.     Defendant paid Mrs. DeCarlo less than 5% of her possible bonus for the January 1, 2021, through December 31, 2021, year. Another employee Plaine had a similar bonus discrepancy. While Plaine's region performed worse than Mrs. DeCarlo's region, Plaine's bonus amount was adjusted to receive most of her bonus and Mrs. DeCarlo's was not adjusted.

29.     Mrs. DeCarlo contacted Braun and Schellinger for an explanation of her bonus calculation. Defendant informed her that bonuses were given at the discretion of management. On May 19, 2022, Braun informed her that she received a "performance discussion" in January 2021 from Braun which reduced her bonus. Braun explained that USRC does not have to inform employees when they are issued counseling, nor provide employees with copies of the counseling, per advice of Marsh (Exhibit 12).

30.     USRC distributed the 2019 bonus structure that details when bonus payments may be reduced at the discretion of management (Exhibit 12b). Mrs. DeCarlo met the performance measures for year (Exhibit 12c).

31.     Mrs. DeCarlo contacted Marsh in USRC human resources to get clarification on USRC's bonus payments and disciplinary process (Exhibit 13). Marsh then informed Schellinger that Mrs. DeCarlo contacted human resources.

32.     On June 1, 2022, Braun placed Mrs. DeCarlo on another PIP for performance (Exhibit 14) Schellinger told Mrs. DeCarlo that if she took a demotion to become an In-center Register Nurse ("IC-RN"), then they would not put her on a PIP.

33.     On June 9, 2022, Mrs. DeCarlo set a meeting with Marsh for June 10, 2022 (Exhibit 15a). Mrs. DeCarlo formally requested an investigation into Schellinger and Braun's treatment of her. Marsh responded that she could not investigate this matter, and referred Mrs. DeCarlo to Rhena Carr, Human Resources Director, in another division (Exhibit 15b).

34.     Later that month, Mrs. DeCarlo began the first step in the online process of filing a charge with the EEOC is to submit an inquiry. This provided the EEOC with basic information to evaluate her complaint and to determine if the agency could help her.

35.     Mrs. DeCarlo sent the documents to Rhena Carr in early July 2022 and spoke with her on July 5, 2022 (Exhibit 16). On August 16, 2022, Mrs. DeCarlo spoke to Carr, and she informed her that she was unable to validate any harassment, bulling or retaliation toward Mrs. DeCarlo (Exhibit 17).

36.     Only six (6) days after Mrs. DeCarlo received the results of the alleged discrimination investigation, on August 25, 2022, Defendant summarily fired Mrs. DeCarlo at the PIP review meeting. When Mrs. DeCarlo requested a termination letter, Marsh stated that only a separation notice is required in Ohio, and Defendant would not provide a termination letter (Exhibit 18). At the time Defendant fired Mrs. DeCarlo, there were no similarly-situated employees who were older than Mrs. DeCarlo.

37.     Tellingly, Defendant replaced Mrs. DeCarlo with Braun as Regional Director Home Therapies for Mid-Atlantic, Northeast and Ohio, a woman twenty (20) years younger than Mrs. DeCarlo, who has less experience in Healthcare and Dialysis Care than Mrs. DeCarlo and had been with the company for less than nine months.

38.     Defendant had knowledge of Mrs. DeCarlo's engagement in protected activities before Defendant terminated her. The day after Defendant fired Mrs. DeCarlo, Schellinger began to call employees at USRC asking about their conversations with Mrs. DeCarlo and warning them to be careful because USRC believes her termination will go to court.

39.     Exhibit 2 is a true and correct copy of 450-2022-05174 Amended EEOC Charge of Discrimination

40.     Exhibit 3 is a true and correct copy of EEOC Right to Sue Letter

41.     Exhibit 4 is a true and correct copy of OCRC Notice of Charges Filed

42.     Exhibit 5 is a true and correct copy of Ohio Business Filing as Foreign Entity

43.     Exhibit 6a is a true and correct copy of Clinical Leaderboard March 2022

44.     Exhibit 6b is a true and correct copy of Clinical Leaderboard Rankings

45.     Exhibit 7 is a true and correct copy of 2020 Bonus payments for Plaintiff

46.     Exhibit 8 is a true and correct copy of Performance Improvement Plan 2021

47.     Exhibit 9 is a true and correct copy of Meeting for PIP discussion

48.     Exhibit 10 is a true and correct copy of Announcement of Demotion for Plaintiff

49.     Exhibit 11 is a true and correct copy of Meeting for Strategic Plan

50.     Exhibit 12 is a true and correct copy of Braun Confirming disciplinary Impact

51.     Exhibit 12b is a true and correct copy of USRC 2019 Bonus program

52.     Exhibit 12c is a true and correct copy of DeCarlo Executive Summary March 2021-2022

53.     Exhibit 13 is a true and correct copy of DeCarlo Bonus Inquiry

54.     Exhibit 14 is a true and correct copy of Performance Improvement Plan 2022

55.     Exhibit 15a is a true and correct copy of HR email

56.     Exhibit 15b is a true and correct copy of HR email follow up

57.     Exhibit 16 is a true and correct copy of HR email with PIP copy

58.     Exhibit 17 is a true and correct copy of HR summary of conversation

59.     Exhibit 18 is a true and correct copy of Refusal to issue termination letter

60.     Exhibit 19 is a true and correct copy of Facebook Message to DeCarlo

## COUNT ONE

## AGE DISCRIMINATION - TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## TITLE VII, 42 U.S.C. § 2000e ET SEQ

61.     Mrs. DeCarlo repeats and realleges the forgoing paragraphs and incorporated as if
fully set forth herein.

62.     At all times material to this Complaint, Defendant was an "employer," and Mrs.
DeCarlo was this Defendant's "employee," as those terms are used under Title VII, 42
U.S.C. §2000e *et seq*.

63.     Defendant violated the Mrs. DeCarlo's rights under Title VII by subjecting Mrs.
DeCarlo to disparate discipline because of her age.

64.     Defendant violated the Mrs. DeCarlo's rights under Title VII by demoting and
terminating her employment because of her age.

65.     Mrs. DeCarlo's age was a "motivating factor" in Defendant's decision to demote and terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

66.     Defendant's above-pled discriminatory conduct toward Mrs. DeCarlo constitutes age discrimination in violation of Title VII.

67.     Defendant acted with malice or with reckless indifference to the federally protected rights of Mrs. DeCarlo.

68.     As a result of Defendant's unlawful actions, Mrs. DeCarlo has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

69.     Mrs. DeCarlo is entitled to an award of back pay and benefits, compensatory damages, attorneys' fees, and all other appropriate damages, remedies, and other relief under Title VII and all federal statutes providing remedies for violations of Title VII.

**COUNT TWO**

**DISCRIMINATORY TERMINATION BASED ON AGE IN VIOLATION OF**

**THE AGE DISCRIMINATION IN EMPLOYMENT ACT 29 U.S.C. §§ 12201 ET SEQ.**

70.     Mrs. DeCarlo repeats and realleges the forgoing paragraphs and incorporated as if fully set forth herein.

71.     Mrs. DeCarlo was fifty-seven years old and qualified for her position when Defendant fired her.

72.     Schellinger regularly made discriminatory comments to Mrs. DeCarlo and in meetings with her co-workers regarding the things Mrs. DeCarlo, "should know by now", and "should already know what to do at her age", implying that they viewed her as too old.

73.     In addition, Schellinger marginalized Mrs. DeCarlo while treating younger similarly-situated employees more favorably. Specifically, demoting Mrs. DeCarlo to report to a person that she had trained, using different deadlines for projects, refusing to offer support, and colluding with other employees to have her fired.

74.     Immediately after firing Mrs. DeCarlo, Defendant replaced her with Braun, previously who was Mrs. DeCarlo's trainee, least twenty years younger than Mrs. DeCarlo, has less experience in Dialysis Medical Care than Mrs. DeCarlo and had been with the company for less than eight months.

75.     Defendant USRC withheld her bonus pay, demote her, and terminated Plaintiff's employment because of her age.

76.     Plaintiff's age was a motivating factor in Defendant's decision to terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

77.     Mrs. DeCarlo suffered damages as a result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

78.     Defendant willfully violated Mrs. DeCarlo's rights under the ADEA and, as a result, is liable for liquidated damages.

79.     Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

## COUNT THREE

### AGE DISCRIMINATION

### AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA), 29 U.S.C. § 621

80.     Mrs. DeCarlo repeats and realleges the forgoing paragraphs and incorporated as if fully set forth herein.

81.     Mrs. DeCarlo was fifty-seven years old and qualified for her position when Defendant fired her.

82.     Mrs. DeCarlo performed her job satisfactorily at all times employed by Defendant.

83.     Plaintiff's age was a motivating factor in Defendant's decision to withhold her bonus pay, demote her position, and terminate her employment, even if there are legitimate non-discriminatory reasons that also motivated these actions.

84.     Mrs. DeCarlo exhausted her administrative remedies.

85.      As a result of Defendant's conduct, Mrs. DeCarlo has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

86.     Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Mrs. DeCarlo and in conscious disregard of her rights.

## COUNT FOUR

### TITLE VII RETALIATION – RETALIATORY DISCIPLINE, RETALIATION IN THE TERMS AND CONDITIONS OF EMPLOYMENT, AND RETALIATORY TERMINATION

87.     Mrs. DeCarlo repeats and realleges the forgoing paragraphs and incorporated as if fully set forth herein.

88.     At all relevant times, Mrs. DeCarlo was an "employee" of the USRC as that term is defined by Title VII, 42 U.S.C. § 2000e et seq.

89.     At all relevant times, Defendant USRC was an "employer" as that term is defined by Title VII, 42 U.S.C. § 2000e et seq.

90.     During her employment with Defendant, Mrs. DeCarlo engaged in statutorily protected activity by, among other things, complaining of age discrimination in violation of Title VII, including but not limited to, in her complaints of discrimination to Defendant's human resources directors.

91.     Defendant subjected Mrs. DeCarlo to retaliation because she opposed, objected to, and complained against illegal race discrimination. Defendant retaliated against Plaintiff by taking various retaliatory actions against her including, but not limited to: (a) negatively reviewing, and discussing the contents of Plaintiff's work (b) continuing to exclude Plaintiff from meetings and interfere with Plaintiff's ability to perform her job; (c) reducing her bonus pay and (c) subjecting Plaintiff to demotions and termination on the basis of her exercise of federally protected rights as compared with employees who did not engage in similar statutorily protected activity.

92.      Defendant lacks any legitimate justification for subjecting Plaintiff to the adverse employment actions complained of above, and/or any such veiled legitimate justifications are mere pretext for retaliation.

93.     The above-pled actions of Defendant constitute retaliation in violation of Title VII of the Civil Rights Act of 1964.

94.     The actions of Defendant in subjecting Plaintiff to the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were

committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of her federally protected rights.

95.     As a direct and proximate result of Defendant's violations of Title VII, Mrs. DeCarlo has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

96.     As a result of the above-pled violations of Title VII, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, and punitive damages, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT FIVE

### RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### 29 U.SC. §§ 12201 ET SEQ.

97.     Mrs. DeCarlo repeats and realleges the forgoing paragraphs and incorporated as if fully set forth herein.

98.     Mrs. DeCarlo was fifty-seven years old and qualified for her position when Defendant fired her.

99.     In the Spring of 2021, on June 10, 2022, June 28, 2022, and July 5, 2022, Mrs. DeCarlo engaged in protected activity by complaining to Marsh, Bonney, and Carr in USRC's human resources department about Schellinger's discriminatory treatment based on Mrs. DeCarlo's age. Specifically, Mrs. DeCarlo told Marsh and Carr that she was being targeted and requested that this be investigated.  Responded Marsh that she would be biased and would not investigate her claims. Carr responded that would not put anything in writing, and she did not validate Mrs. DeCarlo's claims.

100.    Only two days after Mrs. DeCarlo complained of differential treatment, Defendant made Mrs. DeCarlo choose between a demotion or a PIP allegedly because she lacked credibility and presented incomplete work.

101.    Eight days after Defendant refused to issue a written summary of human resources' discrimination investigation that invalidated Mrs. DeCarlo's claims, Defendant summarily fired her. Defendant refused to provide a termination letter with the reasons.

102.    Defendant's alleged reason for terminating Mrs. DeCarlo's employment is pretextual and baseless.  Defendant fired Mrs. DeCarlo because she complained of disparate treatment, harassment, and discrimination on June 10, 2022.

103.    Mrs. DeCarlo's job was given to Braun, another Regional Director of Home Therapies, Northeast, that Mrs. DeCarlo trained who is at least twenty years younger than Mrs. DeCarlo, has less experience in Dialysis Health Care than Mrs. DeCarlo and had been with the company for less than eight months.

104.    Mrs. DeCarlo suffered damages as a result of Defendant's unlawful retaliatory actions, including past and future lost wages and benefits and the costs of bringing this action.

105.    Defendant willfully violated Mrs. DeCarlo's rights under the ADEA and, as a result, is liable for liquidated damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Mrs. DeCarlo respectfully requests the following relief:

A.  Accept jurisdiction over this matter;

B.  declare that Defendants have violated Plaintiff's rights under the Constitution and federal statutes listed above;

C.  Award Plaintiff for her past and future loss of wages and benefits, plus interest;

D.  Order Defendant in lieu of reinstatement, award her front pay (including benefits);

E.  award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury

F.   Award to Plaintiff liquidated damages incurred in connection with this action;

G.   Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action pursuant to Title VII, the ADEA; and

H.   Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims properly triable by a jury.

January 9, 2023

Akron, Ohio

RODERICK LINTON BELFANCE, LLP

/S/ *Jamie V. Parker Esq.*
JAMIE V. PARKER ESQ.
50 South Main Street, 10th Floor
Akron, Ohio 44308-1849
Tele:  (330) 434-3000
Fax:  (330) 434-9220
Email: jparker@rlbllp.com
Attorney Reg 0098317

Attorney for Plaintiff