**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY ANN DECARLO, | ) | CASE NO. 5:23-CV-00041 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | FIRST AMENDED COMPLAINT |
| U.S. RENAL CARE, INC., | ) | |
| | ) | **JURY DEMAND ENDORSED** |
| | ) | |
| Defendant. | ) | |

Now comes Plaintiff, Mary Ann DeCarlo, by and through undersigned counsel, Jamie V. Parker and Roderick, Linton, Belfance, LLP, and for her First Amended Complaint in setting forth her various claims against Defendant, U.S. RENAL CARE, INC., brings the instant action requesting judgment in her favor, and against Defendant, and in support thereof, alleges, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff, Mary Ann DeCarlo, brings this action against U.S. RENAL CARE, INC. ("Defendant" or "USRC") for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. as applied by 29 U.S.C. §§ 12201 et seq., and Ohio's Employment Law Uniformity Act ("Act"), ORC § 4112 et seq. Defendant's decision to terminate Mrs. DeCarlo was the last in a string of unlawful acts of discrimination and retaliation that Defendant has taken against Mrs. DeCarlo because of her age, in retaliation for her protected speech complaining that she was victim of

discrimination, and for the various and sundry allegations set forth in this First Amended Complaint.

2.      Defendant hired Mrs. DeCarlo on August 26, 2019, as a Regional Director of Ohio and Mid-Atlantic Home Therapies. During her first year at USRC, Defendant assigned her a third territory to manage. By October 2019, she was Director of the Ohio, Mid-Atlantic and Northeast regions for Home Therapies. In June 2020, Mrs. DeCarlo's then-supervisor asked her to serve as the interim regional vice president. She had one of the most productive and growing regions. Despite Mrs. DeCarlo's many achievements, Defendant began to subject her to discrimination and retaliation for various unlawful, unwarranted, and/or unmerited reasons, including but not limited to the fact that she is a fifty-seven (57) year old woman.

3.      On August 23, 2021, after two years of service to USRC, Defendant demoted Mrs. DeCarlo and replaced her with an employee who is twenty years younger, had less seniority at USRC, and significantly less experience in the dialysis industry. Defendant used the pretext of a Performance Improvement Plan ("PIP") to demote Mrs. DeCarlo following her initial reports to USRC Human Resources ("Human Resources") personnel regarding her supervisors and their actions.

4.      Following the August 23, 2021, demotion, Defendant withheld nearly all of Mrs. DeCarlo's bonus pay for 2021 based on pretextual "management discretion." When Mrs. DeCarlo requested the involvement of Human Resources, Defendant further retaliated by compelling Mrs. DeCarlo to choose between a second unwarranted demotion or a performance improvement plan, while younger, similarly situated employees with

performance records objectively lower than Mrs. DeCarlo's were provided with full bonus payments, including USRC employees who were not eligible.

5. Defendant refused to investigate Mrs. DeCarlo's complaints of disparate treatment by her supervisors, and within days after Defendant refused to put any findings in writing and provide them to Mrs. DeCarlo, Defendant further retaliated on August 25, 2022, one day before Mrs. DeCarlo's three-year service anniversary, by summarily firing her and assigned her duties to a substantially younger employee.

6. Mrs. DeCarlo seeks back pay and the lost economic benefits of her employment, front pay in lieu of reinstatement, compensatory, liquidated, and punitive damages, reasonable attorney's fees and the costs of litigation, and all other relief this Court may deem just.

7. This First Amended Complaint is filed, leave having been granted by this Honorable Court, in order to, in part, accommodate the concerns expressed by Defendant's putative counsel who, having made contact with Plaintiff's counsel herein, made assertions regarding the claimed potential confidentiality of certain of the exhibits included with the original Complaint as filed in this matter, and preliminarily objected to their inclusion. In doing so, Plaintiff has expressly neither waived any claims nor acceded to nor agreed with any of Defendant's putative counsel's assertions and/or concerns, and Plaintiff specifically preserves and reserves all rights relative to those further claims and such exhibits, as well as for the Court's in-camera or other determinations as to the subject exhibits, as the Court may deem necessary.

## JURISDICTION

8.      Plaintiff fully incorporates by reference the preceding Paragraphs 1-7 of this First Amended Complaint.

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this is a civil action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), as codified, 29 U.S.C. §§ 621 to 634. This court has supplemental jurisdiction over Plaintiff's related claims arising under state laws pursuant to 28 U.S.C. §1367(a) because the state law claims pursuant to ORC § 4112 et seq. are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

10.     Plaintiff fully incorporates by reference the preceding Paragraphs 1-9 of this First Amended Complaint.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. Plaintiff worked 100% remotely from her home in this District; therefore, Plaintiff was employed by and terminated by Defendant in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     Plaintiff fully incorporates by reference the preceding Paragraphs 1-11 of this First Amended Complaint.

13.     On September 21, 2022, Mrs. DeCarlo timely filed charges of age discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). The charges were perfected on October 7, 2022, EEOC Charge No: 450-2022-05175 (Exhibit 2).

14.     On October 11, 2022, the EEOC issued Mrs. DeCarlo a Notice of Right to Sue (Exhibit 3). This Complaint has been filed within 90 days of receipt of that notice, and since filing the Age Discrimination charge with the EEOC, sixty (60) days or more have elapsed.

15.     On November 18, 2022, Mrs. DeCarlo filed charges with the Ohio Civil Rights Commission (OCRC) satisfying the requirements of ORC § 4112.051 (OCRC Charge No: AKRA3(42307)11182022;22A-2023-00964) (Exhibit 4). Mrs. DeCarlo has satisfied the conditions of ORC § 4112.052 to bring a civil action for unlawful discriminatory practice relating to employment or a violation of Age Discrimination.

16.     Mrs. DeCarlo has fully complied with all prerequisites to jurisdiction in this Court under the ADEA, Title VII, and OCRC.

## PARTIES

17.     Plaintiff fully incorporates by reference the preceding Paragraphs 1-16 of this First Amended Complaint.

18.     Plaintiff Mary Ann DeCarlo is a 57-year-old woman who resides in the City of Cuyahoga Falls, Summit County, State of Ohio.

19.     Mrs. DeCarlo is an employee, as defined by the ADEA and ORC § 4112.01. Defendant employed Plaintiff in a remote capacity at all times relevant to this matter.

Mrs. DeCarlo attained her nursing credentials in 1995, which include Registered Nurse (RN), a Bachelor of Science in Nursing (BSN) degree, and a Master of Science in Nursing (MSN) degree from Kent State University. She has held director-level positions for more than a decade.

20.     Upon information and belief, USRC is a Delaware corporation with its corporate headquarters located in Plano, Texas, and registered as a foreign corporation in Ohio under the name "U.S. Renal Care, Inc." (Exhibit 5). USRC owns, co-owns, and/or manages hundreds of dialysis facilities across the United States, with thirty-six (36) dialysis locations in Ohio, including home dialysis programs. USRC is an employer as defined by the ADEA and ORC § 4112.01. Since its founding in 2000, USRC has provided services to patients with chronic and acute renal disease. USRC manages several acute-setting dialysis programs in conjunction with local hospitals. USRC serves approximately 26,000 patients across 31 States and the Territory of Guam, making it one of the largest dialysis providers in the United States by the number of patients served. Each and every one of the USRC employees, representatives, officers, executives, directors, and other actors identified within this First Amended Complaint were acting within the course and scope of their employment with, by, and through, with the knowledge of and/or at the direction and/or for the benefit of USRC on all claims and allegations set forth in this First Amended Complaint, each of its five counts, and each of its prayers for relief.

**FACTS**

21.     The Plaintiff incorporates the preceding Paragraphs 1-20 of this First Amended Complaint by reference.

22.     On August 26, 2019, Mrs. DeCarlo, who was fifty-four (54) years old at the time, started working for the Defendant as the Regional Director of Ohio and Mid-Atlantic Home Therapies.

23.     Approximately three months after her hiring, the management assigned her a third region to manage, the Northeast Region.

24.     In June 2020, Defendant recognized Mrs. DeCarlo's accomplishments by offering her the job of Interim Regional Vice President. She served in this role until a permanent replacement was hired in October 2020 and was awarded a bonus of ten thousand dollars ($10,000) for her additional work as Interim Vice President. USRC provided her with another bonus of seven thousand five hundred dollars ($7,500) for 2020 and 2021 for signing a "retention agreement" containing a no competition and no solicitation agreement after employment termination. Defendant also paid Mrs. DeCarlo 99% of her Home Therapies Regional Director Bonus compensation for the 2020 fiscal year. Mrs. DeCarlo's regions remained among the top performers during her tenure at USRC.

25.     During 2020, Mrs. DeCarlo quickly ascended in her responsibilities at USRC, leading to Conda Schellenger, the Vice President of Home Therapies, taking a reduced role in managing the Home Therapy Division.

26.     Schellenger, who was around the same age as Mrs. DeCarlo, was part of the team that hired Mrs. DeCarlo, specifically for her experience. Mrs. DeCarlo expected to report

to Schellenger. However, USRC reduced Schellenger's responsibilities, and Mrs. DeCarlo's role expanded during the same period.

27.     Despite Mrs. DeCarlo's accomplishments, Schellenger made repeated comments to Mrs. DeCarlo's colleagues about plans to remove her, including but not limited to Cathy Weaver, in December 2020, revealing her collusion with Schellenger to Shannon Plaine. Plaine reported this conversation to Ann Bonney in the Human Resources Department at USRC, as well as to Mrs. DeCarlo.

28.     In February 2021, Defendant requested that Mrs. DeCarlo train Ellen Braun, a female of approximately thirty-five (35) years, to become the Regional Director of Home Therapies for New York.

29.     In addition, Schellenger marginalized Mrs. DeCarlo while treating younger, similarly-situated employees more favorably. She openly treated Mrs. DeCarlo differently, both verbally and physically, than other similarly-situated USRC employees. When Mrs. DeCarlo asked any question, Schellenger would typically admonish her saying "tskt" and inform her that "that was an answer she should already know." Schellenger would also roll her eyes and cross her arms whenever Mrs. DeCarlo asked a question or made a comment. Schellenger offered resources to USRC area managers to support other regional directors but did not offer Mrs. DeCarlo the same assistance, despite having one of the most productive and growing USRC regions.

30.     In the winter of 2020-2021, Mrs. DeCarlo confronted Schellenger regarding her disparate treatment and conversations regarding her future with USRC. Schellenger referred her to Jacqueline "Rosie" Marsh, the Human Resources Director, East Division.

Mrs. DeCarlo attempted to reach Marsh without success but was able to speak to Bonney about Schellenger's discriminatory treatment and Schellenger's involvement with Weaver to remove Mrs. DeCarlo.

31.    Defendant paid Mrs. DeCarlo's Home Therapies Regional Director bonus at the end of March 2021, for her performance period of January 1, 2020 – December 31, 2020. Mrs. DeCarlo received 99% of her annual bonus potential and, in addition, Defendant paid Mrs. DeCarlo a ten thousand dollars ($10,000) bonus for her work as the Interim Regional Vice President for four months in 2020 (Exhibit 7 to the Original Complaint, previously provided in support of this allegation, has been withdrawn at this time), and she received a retention bonus for seven thousand five hundred dollars ($7,500).

32.    In 2021, Schellenger requested that Mrs. DeCarlo create a strategic plan for her regions and submit the plan for Schellenger's review in the spring 2021. Schellenger identified Mrs. DeCarlo's strategic plan in the PIP as evidence of her "lack of substantive knowledge of market and inability to identify growth opportunities, an/or inability/reluctance to communicate this knowledge."

33.    On June 10, 2021, Schellenger used this same strategic plan as evidence in Mrs. DeCarlo's PIP of her poor performance, but Defendant did not meet to review the strategic plan with Mrs. DeCarlo until the week of June 28, 2021 (Exhibit 11 to the Original Complaint, previously provided in support of this allegation, has been withdrawn at this time).

34.    Despite Mrs. DeCarlo's demonstrated performance record, Schellenger placed her on a PIP in June 2021. Schellenger requested a meeting in forty-five (45) days to discuss

Mrs. DeCarlo's improvement. Schellenger then extended the PIP (Exhibit 8 to the Original Complaint has been renumbered and is attached hereto and incorporated herein as Exhibit 6) for two weeks pending feedback from another person who was on a leave of absence (Exhibit 9 to the Original Complaint, previously provided in support of this allegation, has been withdrawn at this time).

35. Defendant did not provide any resources to Mrs. DeCarlo or instructional support to meet the expectations of Mrs. DeCarlo's PIP.

36. Upon Schellenger's PIP review meeting with Mrs. DeCarlo, she demoted Mrs. DeCarlo to Ohio Area Manager, Home Therapies with an 11% reduction in salary and ignored Mrs. DeCarlo's further protestations and requests.

37. On August 23, 2021, Schellenger sent a notice to all employees of USRC announcing Braun as the new Regional Director Home Therapies for Mid-Atlantic, Northeast and Ohio. Defendant required Mrs. DeCarlo to report to Braun, whom she had trained months prior (Exhibit 10 to the Original Complaint has been renumbered and is attached hereto and incorporated herein as Exhibit 7).

38. Next year, Braun then directed Mrs. DeCarlo to provide her 2021 strategic plan for Beth Murphy Sheeler, ("Sheeler") Regional Director of Home Therapies, Southeast to use as a model to create her own strategic plan.

39. Sheeler is believed to be approximately thirty-eight (36) years old in 2021, with significantly less experience than Mrs. DeCarlo.

40. During the spring of 2022, Braun required that Mrs. DeCarlo complete a strategic plan for the region, even though Mrs. DeCarlo was the Ohio Area Manager and Braun was now the Regional Director.

41. Braun demanded Mrs. DeCarlo complete the strategic plan before April 2022 and all other strategic plans, except for Mrs. DeCarlo's strategic plan, were due in August 2022.

42. Braun then used her communications with Mrs. DeCarlo, and the contents of this strategic plan to refuse Mrs. DeCarlo's bonus pay from the period of performance January 1 to December 31, 2021, and to institute a new PIP and demotion in June 2022.

43. Defendant paid Mrs. DeCarlo less than 5% of her possible bonus for the January 1 to December 31, 2021, year. Other USRC employees, similarly, situated to Mrs. DeCarlo like Plaine, and Sheeler, had a similar bonus discrepancies. Plaine's region and Sheeler's region performed worse than Mrs. DeCarlo's region, but Defendant adjusted their bonus amounts to receive most of their performance bonuses and, Mrs. DeCarlo's was not likewise adjusted.

44. Mrs. DeCarlo contacted Braun and Schellenger for an explanation of her 2021 USRC bonus calculation and Defendant informed her that bonuses were given at the discretion of USRC management.

45. On May 19, 2022, Braun informed Mrs. DeCarlo that she received a "performance discussion" in January 2021 from Braun which reduced her bonus. Braun explained that USRC is not required to inform employees when they are issued counseling, nor provide employees with copies of the counseling, per the advice of Marsh

11

(Exhibit 12 to the Original Complaint, previously provided in support of this allegation, has been withdrawn at this time).

46.     USRC distributed the 2019 bonus structure detailing when bonus payments may be reduced at the discretion of management (Exhibit 12b to the Original Complaint, previously provided in support of this allegation, has been withdrawn at this time). Mrs. DeCarlo met the performance measures for the 2021 year (Exhibit 12c to the Original Complaint, previously provided in support of this allegation, has been withdrawn at this time).

47.     Mrs. DeCarlo contacted Marsh in Human Resources for clarification relative to USRC's bonus payments and disciplinary process (Exhibit 13 to the Original Complaint has been renumbered and is attached hereto and incorporated herein as Exhibit 11), and Marsh then informed Schellenger that Mrs. DeCarlo had contacted Human Resources.

48.     On June 1, 2022, Braun placed Mrs. DeCarlo on another PIP (Exhibit 14 to the Original Complaint, has been renumbered, and is attached hereto and incorporated herein as Exhibit 11). Schellenger told Mrs. DeCarlo that if she took a demotion to become an In-center Registered Nurse ("IC-RN"), then Schellenger, on behalf of USRC, would not put Mrs. DeCarlo on a PIP.

49.     On June 9, 2022, Mrs. DeCarlo scheduled a meeting with Marsh for June 10, 2022 (Exhibit 15a to the Original Complaint has been renumbered and is attached hereto and incorporated herein as Exhibit 12). Mrs. DeCarlo formally requested an investigation into Schellenger and Braun's treatment of her. Marsh responded that she could not investigate this matter and referred Mrs. DeCarlo to Rhena Carr ("Carr"), Human

Resources Director, in another division (Exhibit 15b to the Original Complaint has been renumbered and is attached hereto and incorporated herein as Exhibit 13).

50.     Later that month, Mrs. DeCarlo began the first step in the online process of filing a charge with the EEOC was to submit an inquiry. This provided the EEOC with basic information to evaluate her complaint and to determine if the EEOC could assist her.

51.     Mrs. DeCarlo sent the documents to Carr in early July 2022 and spoke with her on July 5, 2022 (Exhibit 16 to the Original Complaint has been renumbered and is attached hereto and incorporated herein as Exhibit 13). On August 16, 2022, Mrs. DeCarlo spoke to Carr, and she informed her that she was unable to validate any harassment, bullying or retaliation toward Mrs. DeCarlo (Exhibit 17 to the Original Complaint has been renumbered and is attached hereto and incorporated herein as Exhibit 14).

52.     USRC did not utilize any standard practices for investigating claims of discrimination, retaliation, or employee complaints in general, as outlined in USRC's employee handbook, with respect to Mrs. DeCarlo's claims, despite the fact that USRC had been the subject of a voluntary settlement and enforcement action related to such matters relative to prior age discrimination charges with the EEOC as recently as 2018.

53.     In late June 2022, Mrs. DeCarlo contacted the EEOC and requested a meeting to pursue charges against Defendant.

54.     Just six (6) days after Mrs. DeCarlo received the results of USRC's alleged discrimination investigation, on August 25, 2022, USRC's Braun summarily fired Mrs. DeCarlo during the PIP review meeting.

13

55.     When Mrs. DeCarlo requested a termination letter, Marsh stated that only a separation notice is required in Ohio, and Defendant would not provide a termination letter (Exhibit 18 to the Original Complaint has been renumbered and is attached hereto and incorporated herein as Exhibit 15).

56.     At the time Defendant fired Mrs. DeCarlo, there were no similarly-situated USRC employees who were Mrs. DeCarlo's age or older than Mrs. DeCarlo.

57.     Defendant replaced Mrs. DeCarlo with Braun as Regional Director Home Therapies for Mid-Atlantic, Northeast and Ohio and then Braun replaced Mrs. DeCarlo's Ohio Area Manager role absorbing her responsibilities.

58.     Defendant had prior knowledge of Mrs. DeCarlo's engagement in protected activities before Defendant terminated her. The day after Defendant fired Mrs. DeCarlo, Schellenger began to call employees at USRC inquiring about their conversations with Mrs. DeCarlo and warning them to be careful because USRC believed her termination would be litigated (Exhibit 19 to the Original Complaint has been renumbered and is attached hereto and incorporated herein as Exhibit 16).

59.     Mrs. DeCarlo suffered economic harm as a result of her termination, including lost wages, lost benefits, and damage to her professional reputation. In addition, Mrs. DeCarlo has suffered and continues to suffer emotional distress, humiliation, embarrassment, mental anguish, and other non-economic damages as a result of Defendant's unlawful conduct.

60.     Defendant's actions toward Mrs. DeCarlo were willful, malicious, and intentional, and constituted a reckless disregard for Mrs. DeCarlo's federally protected rights.

61.     Mrs. DeCarlo has exhausted her administrative remedies with the EEOC and has received a Notice of Right to Sue. This Complaint is timely filed within ninety (90) days of receipt of the Notice of Right to Sue.

62.     Mrs. DeCarlo has complied with all conditions precedent to filing this Complaint.

63.     Mrs. DeCarlo seeks relief in the form of back pay, front pay, and reinstatement, as well as compensatory and punitive damages, attorney's fees, and costs of suit.

64.     Mrs. DeCarlo also seeks a jury trial on all issues so triable.

65.     Exhibit 2 is a true and correct copy of the Amended EEOC Charge of Discrimination, numbered 450-2022-05174.

66.     Exhibit 3 is a true and correct copy of the EEOC Right to Sue Letter.

67.     Exhibit 4 is a true and correct copy of the OCRC Notice of Charges Filed.

68.     Exhibit 5 is a true and correct copy of the Ohio Business Filing as a Foreign Entity.

69.     Exhibit 6, formerly Exhibit 8 to the Original Complaint, is a true and correct copy of the 2021 Performance Improvement Plan.

70.     Exhibit 6a to the Original Complaint, previously provided in support of this allegation, has been withdrawn at this time.

71.     Exhibit 6b is a true and correct copy of the Clinical Leaderboard Rankings.

72.     Exhibit 7 to the Original Complaint, previously provided in support of this allegation, has been withdrawn at this time.

73.     Exhibit 7, formerly Exhibit 13 to the Original Complaint, is a true and correct copy of an Email Meeting for Strategic Plan.

15

74. Exhibit 8, formerly Exhibit 12 to the Original Complaint, is a true and correct copy of Braun's Email Confirming Informal Counseling Impacted Bonus Reduction.

75. Exhibit 12b to the Original Complaint, previously provided in support of this allegation, has been withdrawn at this time.

76. Exhibit 12c to the Original Complaint, previously provided in support of this allegation, has been withdrawn at this time.

77. Exhibit 9, formerly Exhibit 13 to the Original Complaint, is a true and correct copy of the DeCarlo Bonus Inquiry.

78. Exhibit 10, formerly Exhibit 14 to the Original Complaint, is a true and correct copy of Mrs. DeCarlo's Performance Improvement Plan 2022.

79. Exhibit 11, formerly Exhibit 15a to the Original Complaint, is a true and correct copy of an HR email.

80. Exhibit 12, formerly Exhibit 15b to the Original Complaint, is a true and correct copy of an HR email follow-up.

81. Exhibit 13, formerly Exhibit 16 to the Original Complaint, is a true and correct copy of an HR email with PIP copy.

82. Exhibit 14, formerly Exhibit 17 to the Original Complaint, is a true and correct copy of an HR summary of conversation.

83. Exhibit 15, formerly Exhibit 18, is a true and correct copy of the Refusal to Issue Termination Letter.

84. Exhibit 16, formerly Exhibit 19, is a true and correct copy of the Facebook Message to DeCarlo.

## CAUSES OF ACTION

## COUNT ONE: AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"), 29 U.S.C. §621 ET SEQ.

85. Plaintiff fully incorporates by reference the preceding Paragraphs 1-85 of this First Amended Complaint.

86. Mrs. DeCarlo has exhausted her administrative remedies.

87. Plaintiff was a qualified individual over the age of 40 at all times relevant to this action.

88. Defendant U.S. Renal Care, Inc. is an employer, as defined under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq.

89. Defendant discriminated against Plaintiff on the basis of her age, by subjecting her to disparate treatment, harassment, and retaliation because of her age.

90. Defendant, through its agents and employees, created a hostile work environment for Plaintiff because of her age, by subjecting her to a continuous stream of discriminatory comments and actions that created a demeaning and intimidating workplace environment.

91. Defendant's discriminatory actions were pervasive, severe, and created an abusive work environment that altered the terms and conditions of Plaintiff's employment.

92. Schellenger regularly made discriminatory comments to Mrs. DeCarlo and in meetings with her co-workers present, regarding the things Mrs. DeCarlo "should know by now," and "should already know what to do at her age", implying that USRC regarded her as too old.

93.     In addition, Schellenger marginalized Mrs. DeCarlo while treating younger similarly-situated employees more favorably, including but not limited to twice demoting Mrs. DeCarlo to report to a person that she had trained; using disparate deadlines for projects than those uses for Mrs. DeCarlo's peers; refusing to offer appropriate support; and colluding with other USRC employees to have her fired.

94.     Immediately after firing Mrs. DeCarlo, Defendant replaced her with Braun, who had been Mrs. DeCarlo's trainee, and who was at least twenty years younger than Mrs. DeCarlo, had less experience in Dialysis Medical Care than Mrs. DeCarlo, and had been with the USRC for less than eight months.

95.     Defendant USRC withheld Plaintiff's bonus pay, demoted her, and terminated her employment because of her age.

96.     Plaintiff's age was a motivating factor in Defendant's decision to terminate her employment, even if there may be legitimate, non-discriminatory reasons that may have also motivated USRC to take these actions.

97.     Plaintiff made numerous complaints to her supervisors, including Schellinger and Marsh, about the age-based harassment and discrimination to which she was subjected, but no meaningful action was taken by USRC to address Plaintiff's complaints.

98.     Plaintiff's complaints about age discrimination and harassment were a motivating factor in Defendant's decision to place her on a PIP, reduce her salary, and ultimately terminate her employment.

99. Defendant's discriminatory acts against Plaintiff were willful, malicious, and/or in reckless disregard of Plaintiff's rights under the ADEA. Defendant willfully violated Mrs. DeCarlo's rights under the ADEA and, as a result, is liable for liquidated damages.

100. Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

101. Defendant's conduct has caused Plaintiff to suffer emotional distress, humiliation, and other non-economic damages, as well as significant economic losses and other damages, including but not limited to the costs of this matter, attorney fees and expenses, which Plaintiff is entitled to recover from Defendant.

102. Defendant's discriminatory conduct is in violation of the ADEA, 29 U.S.C. § 621 *et seq*.

**COUNT TWO: RETALIATION UNDER THE ADEA, 29 U.S.C. § 623(D)**

103. Plaintiff fully incorporates by reference the preceding Paragraphs 1-102 of this First Amended Complaint.

104. Plaintiff engaged in protected activity by making complaints about age discrimination and Defendant discriminated against Plaintiff on the basis of her age, by subjecting her to disparate treatment, harassment, and retaliation because of her age.

105. Defendant, through its agents and employees, created a hostile work environment for Plaintiff because of her age, by subjecting her to a continuous stream of

discriminatory comments and actions that created a demeaning and intimidating workplace environment.

106. Defendant's discriminatory actions were pervasive, severe, and created an abusive work environment that altered the terms and conditions of Plaintiff's employment.

107. Plaintiff engaged in protected activity by making complaints about age discrimination and harassment to her supervisors and Human Resources.

108. Defendant was aware of Plaintiff's protected activity.

109. Defendant took adverse employment actions against Plaintiff, including placing her on a performance improvement plan, reducing her salary, and ultimately terminating her employment, in retaliation for her protected activity.

110. In the Spring of 2021, and on June 10, 2022, June 28, 2022, and July 5, 2022, Mrs. DeCarlo engaged in protected activity by complaining to Marsh, Bonney, and Carr in USRC's Human Resources department about Schellenger's discriminatory treatment based on Mrs. DeCarlo's age. Specifically, Mrs. DeCarlo told Marsh and Carr that she was being targeted and requested that this be investigated; Marsh responded that she would be biased and would not investigate her claims; Carr responded that she would not put anything in writing, and she thus refused to validate Mrs. DeCarlo's claims.

111. Only two days after Mrs. DeCarlo complained of differential treatment, Defendant compelled Mrs. DeCarlo choose between a demotion or a PIP allegedly because she lacked credibility and presented incomplete work.

112. Eight days after Defendant refused to issue a written summary of human resources' discrimination investigation that invalidated Mrs. DeCarlo's claims, Defendant

summarily fired Mrs. DeCarlo; Defendant refused to provide a termination letter with the reasons.

113.    Defendant's alleged reason for terminating Mrs. DeCarlo's employment is pretextual and baseless. Defendant fired Mrs. DeCarlo because she complained of disparate treatment, harassment, and discrimination on June 10, 2022.

114.    Defendant's retaliatory conduct violated the Age Discrimination in Employment Act, 29 U.S.C. § 623(d).

115.    As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered lost earnings and benefits, damage to her reputation, emotional distress, and other damages to be proven at trial, including but not limited to the costs of this matter, attorney fees and expenses, which Plaintiff is entitled to recover from Defendant.

**COUNT THREE: TITLE VII RETALIATION – RETALIATORY DISCIPLINE, RETALIATION IN THE TERMS AND CONDITIONS OF EMPLOYMENT, AND RETALIATORY TERMINATION**

116.    Plaintiff fully incorporates by reference the preceding Paragraphs 1-115 of this First Amended Complaint.

117.    At all relevant times, Mrs. DeCarlo was an "employee" of the USRC as that term is defined by Title VII, 42 U.S.C. § 2000e et seq.

118.    At all relevant times, Defendant USRC was an "employer" as that term is defined by Title VII, 42 U.S.C. § 2000e et seq.

21

119. During her employment with Defendant, Mrs. DeCarlo engaged in statutorily protected activity by, among other things, complaining of age discrimination in violation of Title VII, including but not limited to, in her complaints of discrimination to Defendant's Human Resources directors.

120. Defendant subjected Mrs. DeCarlo to retaliation because she opposed, objected to, and complained about illegal discrimination. Defendant retaliated against Plaintiff by undertaking various retaliatory actions against her including but not limited to: (A) negatively reviewing, and discussing the contents of Plaintiff's work; (B) continuing to exclude Plaintiff from meetings and interfere with Plaintiff's ability to perform her job; (C) reducing her bonus pay; and (D) subjecting Plaintiff to multiple demotions and ultimately termination on the basis of her exercise of federally protected rights as compared with similarly-situated employees who did not engage in similar statutorily-protected activity.

121. Defendant lacks any legitimate justification for subjecting Plaintiff to the adverse employment actions complained of above, and/or any such veiled legitimate justifications are mere pretext for retaliation.

122. The above-pled actions of Defendant constitute retaliation in violation of Title VII of the Civil Rights Act of 1964.

123. The actions of Defendant in subjecting Plaintiff to the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of her federally protected rights.

124. As a direct and proximate result of Defendant's violations of Title VII, Mrs. DeCarlo has suffered damages including but not limited to emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

125. As a result of the above-pled violations of Title VII, Plaintiff is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, and punitive damages, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII, including but not limited to the costs of this matter, attorney fees and expenses, which Plaintiff is entitled to recover from Defendant.

## COUNT FOUR: VIOLATION OF OHIO'S FAIR EMPLOYMENT PRACTICES ACT, OHIO REV. CODE § 4112.02

126. Plaintiff fully incorporates by reference the preceding Paragraphs 1-125 of this First Amended Complaint.

127. Mrs. DeCarlo was a qualified individual over the age of 40 at all times relevant to this action.

128. Defendant U.S. Renal Care, Inc. is an employer, as defined under the Ohio Fair Employment Practices Act, Ohio Rev. Code § 4112.02.

129. Defendant discriminated against Plaintiff on the basis of her age, by subjecting her to disparate treatment, harassment, and retaliation because of her age, in violation of Ohio Rev. Code § 4112.02.

130.	Defendant, as Plaintiff's employer, had a duty to provide a work environment free from discrimination and harassment.

131.	Defendant, through its agents and employees, created a hostile work environment for Plaintiff because of her age, by subjecting her to a continuous stream of discriminatory comments and actions that created a demeaning and intimidating workplace environment.

132.	Defendant USRC withheld Plaintiff's bonus pay, demoted her, and terminated her employment because of her age.

133.	Plaintiff's age was a motivating factor in Defendant's decision to terminate her employment, even if there may be legitimate, non-discriminatory reasons that may have also motivated USRC to take these actions.

134.	Plaintiff made numerous complaints to her supervisors, including Schellinger and Marsh, about the age-based harassment and discrimination to which she was subjected, but no meaningful action was taken by USRC to address Plaintiff's complaints.

135.	Plaintiff's complaints about age discrimination and harassment were a motivating factor in Defendant's decision to place her on a PIP, reduce her salary, and ultimately terminate her employment.

136.	Defendant's discriminatory acts against Plaintiff were willful, malicious, and/or in reckless disregard of Plaintiff's rights under Ohio law.

137.     Plaintiff is entitled to an award of back pay and benefits, front pay, punitive damages, attorneys' fees, and all other appropriate damages, remedies, and other relief available under Ohio law.

138.     Defendant's conduct has caused Plaintiff to suffer emotional distress, humiliation, and other non-economic damages, as well as significant economic losses and other damages, including but not limited to the costs of this matter, attorney fees and expenses, which Plaintiff is entitled to recover from Defendant.

## COUNT FIVE: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

139.     P Plaintiff fully incorporates by reference paragraphs 1-138 of this Amended Complaint.

140.     Defendant owed a duty of care to Plaintiff to provide a workplace free from harassment and discrimination. USRC was at that time subject to a self-imposed duty to provide management training regarding age discrimination for at least two years 2018-2020.

141.     Defendant breached that duty by engaging in discriminatory and harassing conduct towards the Plaintiff.

142.     Defendant's breach of duty was the proximate cause of Plaintiff's emotional distress.

143.     Defendant's conduct was extreme and outrageous, going beyond all possible bounds of decency, and was beyond the scope of Plaintiff's consent, thereby causing Plaintiff's emotional distress.

144.    Defendant acted negligently by, inter alia, failing to take appropriate steps to prevent and correct discriminatory behavior, ignoring Plaintiff's complaints of harassment, and retaliating against Plaintiff for speaking out against discriminatory conduct.

145.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered severe emotional distress, including but not limited to humiliation, embarrassment, anxiety, and mental anguish.

146.    Plaintiff is entitled to recover compensatory damages for the emotional distress caused by Defendant's conduct.

147.    Plaintiff is entitled to recover punitive damages in an amount sufficient to punish and deter Defendant's egregious conduct and to serve as an example to others.

148.    Plaintiff is entitled to recover all other damages allowed by law, including but not limited to costs, interest, and reasonable attorney's fees.

149.

## **PRAYER FOR RELIEF**

WHEREFORE.  Plaintiff, by and through counsel hereunder, respectfully requests that she be granted the following relief:

A.  That a copy of the Summons and the First Amended Complaint be served upon Defendant;

B.  That Plaintiff have a trial by jury as to each and every appropriate issue;

26

C. That judgment be entered in favor of Plaintiff, and against Defendant, upon each and every of the five counts set forth in Plaintiff's First Amended Complaint;

D. The full recovery by Plaintiff of all out-of-pocket and other expenses, upon each and every of the five counts set forth in Plaintiff's First Amended Complaint, in an amount to be set forth more specifically by way of amendment and/or at trial;

E. The full recovery by Plaintiff of all lost income, including past, present, and future income, benefits, and perquisites, upon each and every of the five counts set forth in Plaintiff's First Amended Complaint, in an amount to be set forth more specifically by way of amendment and/or at trial;

F. The full recovery by Plaintiff of compensatory damages upon each and every of the five counts set forth in Plaintiff's First Amended Complaint, in an amount to be set forth more specifically by way of amendment and/or at trial;

G. The full recovery by Plaintiff of punitive damages upon the third and fifth counts as set forth in Plaintiff's First Amended Complaint, in an amount sufficient to deter future similar conduct by Defendant, and to be set forth more specifically by way of amendment and/or trial;

H. The full recovery by Plaintiff of liquidated damages upon the second count as set forth in Plaintiff's First Amended Complaint, in an amount to be set forth more specifically by way of amendment and/or at trial;

I.   The recovery by Plaintiff of the reasonable attorney's fees and associated and related expenses of litigation, including but not limited to those incurred in connection with this action pursuant to Title VII of the ADEA, in an amount to be set forth more specifically by way of amendment and/or at trial; and

J.   Such other and additional and/or alternative relief as this Honorable Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

April 3, 2023

Akron, Ohio

RESPECTFULLY SUBMITTED,

/S/ Jamie V. Parker, Esq.

JAMIE V. PARKER ESQ.
RODERICK, LINTON, BELFANCE, LLP
50 South Main Street, 10th Floor
Akron, Ohio 44308-1849
Tele: (330) 434-3000
Fax: (330) 434-9220
Email: jparker@rlbllp.com
Attorney Reg 0098317

Attorney for Plaintiff Mary Ann DeCarlo

28